# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JUAN CARLOS MALDONADO-MEJIA,

    Petitioner,

v.

BRIAN E. WILLIAMS, et al.,

    Respondents.

Case No.: 2:14-cv-01484-APG-VCF

**Order**

Juan Carlos Maldonado-Mejia, a Nevada prisoner, filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2254. I deny Maldonado-Mejia's habeas petition, deny him a certificate of appealability, and direct the Clerk of the Court to enter judgment accordingly.

## I.   BACKGROUND

Maldonado-Mejia's convictions are the result of events that occurred in Clark County, Nevada on or about May 24, 2009. ECF No. 14-1. In its order affirming Maldonado-Mejia's conviction, the Supreme Court of Nevada described the crime as follows:

> A witness testified that she observed Maldonado-Mejia operating a jet ski at a high rate of speed inside the no wake zone at Lake Mohave. A moment later, the witness heard a crash and looked up to see that Maldonado-Mejia had crashed his jet ski into another man on a yellow jet ski. A second witness testified that he saw Maldonado-Mejia operating his jet ski in an irresponsible manner which caused him to order his children to stay out of the water. That witness testified that he observed the yellow jet ski slow down as it came into the no wake zone when Maldonado-Mejia hit the victim at a high rate of speed on the port side of the yellow jet ski. The witness testified that the victim tried to turn to the right to avoid the impact but Maldonado-Mejia was going too fast. A third witness testified that the two jet skis were heading directly towards each other when he saw the victim's jet ski stop briefly and then accelerate just before impact.
>
> An officer from the Nevada Department of Wildlife testified that he arrived on scene shortly after the accident while the victim was being treated by an off-duty nurse and emergency medical technician and saw severe bruising on the victim's

1
2
3
4
5

lower left chest and abdomen.  The victim died a short time later.  When the officer spoke with Maldonado-Mejia, he noticed that Maldonado-Mejia smelled of alcohol and had bloodshot watery eyes and an unsteady gait.  The officer performed six field sobriety tests for impairment on his boat and Maldonado-Mejia showed signs of impairment in all six tests.  Later, the officer attended the victim's autopsy and observed that the measurements of the victim's injuries were consistent with the design of the bow of Maldonado-Mejia's jet ski.  The officer also testified that the watercraft navigation rules require a vessel which is approaching another vessel's port side to give-way by stopping or getting out of the way.

6  ECF No. 14-23 at 2-3.

7       Following a jury trial, Maldonado-Mejia was found guilty of (1) operating or being in

8  actual physical control of a power or sail vessel while under the influence of intoxicating liquor

9  causing death and/or substantial bodily harm and (2) involuntary manslaughter. ECF No. 14-22.

10  Maldonado-Mejia was sentenced to 48 to 150 months in prison. *Id.*  Maldonado-Mejia appealed,

11  and the Supreme Court of Nevada affirmed on May 15, 2013. ECF No. 14-23.  Remittitur issued

12  on June 11, 2013. ECF No. 14-24.

13       Maldonado-Mejia filed a counseled state habeas petition on June 20, 2014. ECF No. 4.

14  The state district court denied the petition, determining that it was time-barred. ECF No. 14-26 at

15  5.  Maldonado-Mejia appealed, and the Nevada Court of Appeals affirmed on August 17, 2016.

16  ECF No. 18-39.  Maldonado-Mejia's petitions for rehearing and review were both denied. ECF

17  Nos. 15-16, 15-20.  Remittitur issued on April 20, 2017. ECF No. 15-21.

18       Maldonado-Mejia filed a counseled federal habeas petition on September 12, 2014. ECF

19  No. 1.  On the same day, Maldonado-Mejia moved to stay the proceedings, explaining that his

20  state habeas petition had yet to be resolved. ECF No. 2 at 2.  I granted Maldonado-Mejia's

21  motion on May 14, 2015 and ordered the Clerk to administratively close this action. ECF No. 7.

22  Maldonado-Mejia moved to reopen this action on June 23, 2017 and filed an amended petition

23  on July 17, 2017. ECF Nos. 8, 9.  I lifted the stay and reopened the file. ECF No. 10.

The respondents moved to dismiss Maldonado-Mejia's amended petition (ECF No. 17), which I granted in part (ECF No. 29).  Specifically, I dismissed Grounds 2 and 4 of the amended petition, and I deferred consideration of whether Maldonado-Mejia can establish cause and prejudice for Ground 3, which I determined was procedurally defaulted. ECF No. 29 at 6.  The respondents answered the remaining grounds in Maldonado-Mejia's amended petition (ECF No. 34) and Maldonado-Mejia replied (ECF No. 35).

In his remaining grounds for relief, Maldonado-Mejia alleges (1) the State's use of expert testimony and laboratory results constituted a violation of the Confrontation Clause, and (2) 23 claims that his trial counsel was ineffective. ECF No. 9.

## II.    STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) sets forth the standard of review generally applicable in habeas corpus cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362,

405-06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413).  "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous.  The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409-10) (internal citation omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

**III.    DISCUSSION**

    **A.    Ground 1**

In Ground 1, Maldonado-Mejia alleges that the State's use of expert testimony and laboratory results violated his Sixth and Fourteenth Amendment rights because the medical examiner who testified at his trial about the victim's toxicology and autopsy reports was not the

medical examiner who examined the victim. ECF No. 9 at 19; ECF No. 35 at 2.[1]  In affirming

Maldonado-Mejia's judgment of conviction, the Supreme Court of Nevada held:

> Maldonado-Mejia contends that the district court violated the Confrontation Clause by permitting a medical examiner to testify to the victim's manner of death and the results of a toxicology report because the medical examiner did not actually perform the autopsy or the toxicology test.  The autopsy report and the toxicology report were both admitted into evidence.  Because Maldonado-Mejia failed to object to the medical examiner's testimony, we review for plain error.  NRS 178.602; *Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003).  "In conducting plain error review, we must examine whether there was 'error,' whether the error was 'plain' or clear, and whether the error affected the defendant's substantial rights."  *Green*, 119 Nev. at 545, 80 P.3d at 95.
>
> The Sixth Amendment Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him."  U.S. Const. amend. VI.  Although the lab technician who concluded that the victim's blood alcohol content was above the legal limit when he was struck by Maldonado-Mejia was not subject to cross-examination, we conclude that the medical examiner's testimony about the lab technician's conclusions did not violate Maldonado-Mejia's rights under the Confrontation Clause because this testimony was not "against him." *Id.*  In fact, this evidence supported Maldonado-Mejia's theory of defense that the victim's actions caused the accident.  Therefore, we conclude that the district court did not commit plain error by allowing the medical examiner to testify about the result in the toxicology report.
>
> As to Maldonado-Mejia's contention that the medical examiner's testimony about the results of an autopsy performed by another examiner violated the Confrontation Clause, Maldonado-Mejia fails to identify which statements are testimonial.  The medical examiner testified that her opinion was based upon the autopsy report and

---

[1] The respondents argue that this claim is unexhausted due to my previous finding that Maldonado-Mejia's amended judgment of conviction constituted a new judgment. ECF No. 34 at 8.  In denying the respondents' argument in their motion to dismiss that Maldonado-Mejia's federal habeas petition was untimely because his original petition was filed more than a year after his conviction became final, I explained that an amended judgment of conviction had been entered and that the limitation period begins to run from the date of that judgment, as it was the judgment pursuant to which Maldonado-Mejia was being held. ECF No. 29 at 2 (citing *Smith v. Williams*, 871 F.3d 684, 687 (9th Cir. 2017) ("[T]he judgment from which the AEDPA statute of limitations runs is the one pursuant to which the petitioner is incarcerated.").  Exhaustion requires a habeas petitioner to first exhaust state court remedies on a claim before presenting that claim to the federal courts. 28 U.S.C. § 2254(b)(1)(A).  Because exhaustion is claim-based, the respondents' argument lacks merit.

the photographs taken during the autopsy.   We have never held that the Confrontation Clause prohibits the testimony of an expert witness which is based upon autopsy photographs. *Cf. Vega v. State*, 126 Nev. ___, ___, 236 P.3d 632, 638 (2010) (holding that an independent opinion based on a video recording does not violate the Confrontation Clause because expert's judgment, proficiency and methodology are subject to cross-examination).   Because Maldonado-Mejia has not identified the offending testimony with specificity, we cannot determine whether there was error or whether the error was clear.   Even if the medical examiner's testimony was clear error, the independent testimony of the officer and the other witnesses was sufficient to establish that Maldonado-Mejia's jet ski caused substantial injury and death to the victim.   Therefore, Maldonado-Mejia cannot show that the medical examiner's testimony "(1) had a prejudicial impact on the verdict when viewed in context of the trial as a whole, or (2) seriously affects the integrity or public reputation of the judicial proceedings." *Libby v. State*, 109 Nev. 905, 911, 859 P.2d 1050, 1054 (1993), *vacated on other grounds*, 516 U.S. 1037 (1996).   Thus, Maldonado-Mejia is not entitled to relief on this claim.

ECF No. 14-23 at 4-6.

Dr. Alane Olson, the medical examiner with the Clark County Coroner's Office, testified that Dr. Ronald Knoblock conducted the autopsy in 2009. ECF No. 14-7 at 16-17.  However, Dr. Knoblock worked at the Clark County Coroner's Office "on a part-time basis to help out when [they were] busy," so Dr. Olson was subpoenaed to testify at Maldonado-Mejia's trial instead. *Id.* at 17. Dr. Olson explained that "if the doctor who performed the exam isn't available to testify, then one of the other medical examiner's [sic] will review the documents available and go to Court and testify about the case." *Id.*  In preparation for her testimony, Dr. Olson "looked at the [victim's] autopsy report, the toxicology report, the investigative report and the photographs taken." *Id.*  Dr. Olson explained that this preparation "g[a]ve [her] the ability to be able to testify . . . and give an opinion as to the cause and manner of [the victim's] death." *Id.*  Dr. Olson testified that the victim "died as a result of multiple blunt force injuries," and that due to the victim's .09 blood alcohol content, "[t]he manner of death [was an] accident." *Id.* at 19. Dr. Olson explained that the victim's blood alcohol content was "probably . . . at a .09 when he died"

1    considering that he was autopsied approximately 12 hours after he died and was kept in a

2    refrigerated environment during that time. *Id.* at 20.  The victim's autopsy and toxicology reports

3    were admitted into evidence through Dr. Olson's testimony. *Id.*

4            The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions,

5    the accused shall enjoy the right . . . to be confronted with the witnesses against him."  "[A]

6    primary interest secured by [the Confrontation Clause] is the right of cross-examination."

7    *Douglas v. Alabama*, 380 U.S. 415, 418 (1965); *see also Kentucky v. Stincer*, 482 U.S. 730, 739

8    (1987) ("[T]he Confrontation Clause's functional purpose i[s] ensuring a defendant an

9    opportunity for cross-examination.").  The Confrontation Clause bars "admission of testimonial

10   statements of a witness who did not appear at trial unless he was unavailable to testify, and the

11   defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S.

12   36, 53-54 (2004).  If a Confrontation Clause violation occurs, the habeas court conducts a

13   harmless error analysis. *Hernandez v. Small*, 282 F.3d 1132, 1144 (9th Cir. 2002) (citing *Brecht*

14   *v. Abrahamson*, 507 U.S. 619 (1993) (holding that habeas relief is proper only if an error by the

15   state court "had substantial and injurious effect or influence in determining the jury's verdict")).

16           Turning first to the toxicology report, the Supreme Court of Nevada reasonably

17   concluded that "the medical examiner's testimony about the lab technician's conclusions did not

18   violate Maldonado-Mejia's rights under the Confrontation Clause because this testimony was not

19   'against him.'" ECF No. 14-23 at 5.  "The Confrontation Clause refers to testimony by

20   'witnesses against' an accused." *Williams v. Illinois*, 567 U.S. 50, 82 (2012) (explaining that one

21   of "[t]he abuses that the Court has identified as prompting the adoption of the Confrontation

22   Clause . . . involved out-of-court statements having the primary purpose of accusing a targeted

23   individual of engaging in criminal conduct").  As the Supreme Court of Nevada reasonably

noted, although Dr. Olson was a State witness her testimony about the victim's blood alcohol content supported Maldonado-Mejia's defense that the victim's actions caused the accident. Further, Dr. Olson's testimony about the victim's toxicology report was used to explain how the accidental manner of death was assessed. *See* ECF No. 14-7 at 19.  Thus, the victim's toxicology report was not offered for its truth. *Crawford*, 541 U.S. at 59 n.9 (explaining that "[t]he [Confrontation] Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted"); *Williams*, 567 U.S. at 58 ("Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which that opinion rests are not offered for their truth and thus fall outside the scope of the Confrontation Clause.").[2]

Turning to Dr. Olson's testimony about the autopsy report, the Supreme Court of Nevada reasonably concluded that her testimony was not testimonial.  Indeed, Dr. Olson based her opinion about the victim's injuries, cause of death, and manner of death on her review of "the autopsy report, the toxicology report, the investigative report and the photographs taken." ECF No. 14-7 at 17.  Because Dr. Olson testified regarding her own observations and opinions based on the evidence, there is no Confrontation Clause violation. *See Flournoy v. Small*, 681 F.3d 1000, 1001-02 (9th Cir. 2012) ("[T]here was no clearly established federal law, based on decisions of the United States Supreme Court, that held [a forensic analyst's] testimony to violate the Confrontation Clause in circumstances where the testifying witness participated in

---

[2] Maldonado-Mejia argues that if the actual toxicologist who performed the tests on the victim had been present in court, he could have confronted that person about the victim's alcohol concentration and whether it increased or decreased due to the victim's body being in the water for a sustained period and suffering substantial trauma. ECF No. 35 at 6.  However, Maldonado-Mejia's trial counsel asked Dr. Olson similar questions during cross-examination. *See* ECF No. 14-7 at 20.

1   and reviewed the crime lab's work, even though she did not personally conduct all the testing

2   herself.").

3        Turning finally to the autopsy itself, the Supreme Court of the United States has held that

4   "analysts' affidavits [are] testimonial statements," so "[a]bsent a showing that the analysts were

5   unavailable to testify at trial *and* that petitioner had a prior opportunity to cross-examine them,

6   petitioner was entitled to be confronted with the analysts at trial." *Melendez-Diaz v.*

7   *Massachusetts*, 557 U.S. 305, 311 (2009) (emphasis in original) (internal quotation marks

8   omitted); *see also Bullcoming v. New Mexico*, 564 U.S. 647, 665 (2011) (holding that a blood

9   alcohol analysis report was testimonial).  However, the testimonial nature of an autopsy has not

10   been evaluated by the Supreme Court.  In fact, Maldonado-Mejia admits that "the Supreme Court

11   has never ruled on the specific fact pattern of an autopsy." ECF No. 35 at 7.  Accordingly, the

12   Supreme Court of Nevada's decision could not be contrary to, or an unreasonable application of,

13   clearly established law as determined by the Supreme Court of the United States, because the

14   Supreme Court of the United States had not clearly established that autopsy reports were

15   testimonial at the time the Supreme Court of Nevada decided Maldonado-Mejia's appeal. *Carey*

16   *v. Musladin*, 549 U.S. 70, 77 (2006); *see also Greene v. Fisher*, 565 U.S. 34, 38 (2011)

17   (explaining that 28 U.S.C. § 2254(d)'s "backward-looking language requires an examination of

18   the state-court decision at the time it was made" (internal citations omitted)).

19        Because the Supreme Court of Nevada reasonably concluded that Maldonado-Mejia's

20   right to confront the witnesses against him was not violated, Maldonado-Mejia is denied federal

21   habeas relief for Ground 1.

22   ////

23   ////

## B.      Ground 3

In Ground 3, Maldonado-Mejia alleges 23 grounds of ineffective assistance of his trial counsel. *See* ECF No. 9 at 26-28.  I previously determined that this ground was procedurally defaulted. ECF No. 29 at 4.  Maldonado-Mejia argued that he could demonstrate cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012), to excuse the default because his post-conviction counsel was ineffective. *Id.* at 5.  I deferred consideration of this argument until the time of merits consideration. *Id.* at 5-6.  That time is now.

In *Martinez*, the Supreme Court ruled that "when a State requires a prisoner to raise an ineffective-assistance-of-trial counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim" if "the state courts did not appoint counsel in the initial-review collateral proceeding" or "where appointed counsel in the initial-review collateral proceeding . . . was ineffective." 566 U.S. at 14.  "To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id.*  Maldonado-Mejia's underlying ineffective-assistance-of-trial-counsel claims are not substantial.

In *Strickland*, the Supreme Court propounded a two-prong test for claims of ineffective assistance of counsel, requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).  A court considering a claim of ineffective assistance of counsel must apply a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Id.* at 689.  The petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.  And to establish prejudice under *Strickland*, it is not enough for the habeas petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.  Rather, the errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

Where a state district court previously adjudicated the claim of ineffective assistance of counsel under *Strickland*, establishing that the decision was unreasonable is especially difficult. *See Harrington*, 562 U.S. at 104–05.  In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *Id.* at 105; *see also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted) ("When a federal court reviews a state court's *Strickland* determination under AEDPA, both AEDPA and *Strickland*'s deferential standards apply; hence, the Supreme Court's description of the standard as doubly deferential.").  The Supreme Court further clarified that, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Maldonado-Mejia asserts 23 ineffective-assistance-of-counsel claims.

### 1.    Ground 3(a)

In Ground 3(a), Maldonado-Mejia argues that his trial counsel failed to review discovery prior to trial. ECF No. 9 at 26.  As an example, he argues that a witness testified that Maldonado-Mejia had been driving the jet ski all afternoon, but this fact was contradicted by a police report that his trial counsel failed to use to rebut the witness's testimony. ECF No. 35 at 12.

Prior to trial, Maldonado-Mejia's trial counsel moved for discovery on three occasions. ECF Nos. 18-7, 18-12, 18-16. Specifically, Maldonado-Mejia's trial counsel first requested "any and all evidence favorable to the Defendant, including exculpatory evidence, evidence relevant to the credibility of the Government's witnesses, and evidence more directly related to the guilt or innocence of the Defendant." ECF No. 18-7 at 2. Thereafter, Maldonado-Mejia's trial counsel requested "a copy of the Policy and Procedure Manual the Park Rangers use on how to give Field Sobriety Test, how to investigate a crime scene, boating, jet ski, death, etc. . . . and the procedures used in exercising medical assistance." ECF No. 18-12 at 2. Finally, after being provided with the Nevada Department of Wildlife's standard operating procedures from after the accident, Maldonado-Mejia's trial counsel requested "the Standard Operating Procedures used during the time of this incident." ECF No. 18-16 at 3.

Although trial counsel may have failed to rebut a witness's testimony using a police report that was turned over during discovery,[3] Maldonado-Mejia fails to demonstrate that his trial counsel's "representation fell below an objective standard of reasonableness" regarding discovery. *Strickland*, 466 U.S. at 688. Maldonado-Mejia's trial counsel moved for discovery three times, and his third request demonstrates that he reviewed the responses and determined that the wrong version of a document had been provided. Because Maldonado-Mejia fails to demonstrate that his trial counsel was deficient for not reviewing discovery, Ground 3(a) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 2.     Ground 3(b)

In Ground 3(b), Maldonado-Mejia argues that his trial counsel failed to hire an investigator. ECF No. 9 at 27. Maldonado-Mejia fails to substantiate this claim. Prior to trial,

---

[3] This failure is further analyzed in Ground 3(k).

1  Maldonado-Mejia's trial counsel applied for the appointment of an investigator, Collette Putnam,

2  to assist in pretrial investigations. ECF No. 18-3 at 2.  The state district court granted the

3  application. *See* ECF No. 18-6 at 4.  And in a motion to continue filed shortly thereafter, trial

4  counsel stated that "our newly appointed investigator is still in the process of investigating." *Id.*

5  Because this claim lacks merit, Ground 3(b) is not substantial and is denied as being procedurally

6  defaulted. *See Martinez*, 566 U.S. at 14.[4]

7          **3.**        **Ground 3(c)**

8        In Ground 3(c), Maldonado-Mejia argues that his trial counsel failed to hire an accident

9  reconstruction expert. ECF No. 9 at 27.  Maldonado-Mejia alleges that if his trial counsel had

10  hired an expert, he would have obtained a report like the one obtained during post-conviction

11  proceedings from William J. Heffner. ECF No. 35 at 14.

12        Defense counsel has a "duty to make reasonable investigations or to make a reasonable

13  decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691.  "In any

14  ineffectiveness case, a particular decision not to investigate must be directly assessed for

15  reasonableness in all the circumstances, applying a heavy measure of deference to counsel's

16  judgments." *Id.*  This investigatory duty includes investigating the defendant's "most important

17  defense" (*Sanders v. Ratelle*, 21 F.3d 1446, 1457 (9th Cir. 1994)), and investigating and

18  introducing evidence that demonstrates factual innocence or evidence that raises sufficient doubt

19  about the defendant's innocence. *Hart v. Gomez*, 174 F.3d 1067, 1070 (9th Cir. 1999).

20

21       [4] In his reply brief, Maldonado-Mejia asserts that had his trial counsel hired an
investigator, that investigator would have contacted Edward Rodriguez and Rigoberto Rivera,

22  "found out that their stories were very useful, and conveyed this to counsel." ECF No. 35 at 12-
13.  He argues that his trial counsel failed to interview Rivera in Ground 3(e) and argues that his

23  trial counsel failed to present Rodriguez's testimony in Ground 3(f).  Thus, allegations
concerning Rivera and Rodriguez will be addressed in those two respective grounds, not here
where he fails to show that his trial counsel did not hire an investigator.

1    It is unclear from the record whether Maldonado-Mejia's trial counsel investigated hiring

2 a reconstruction expert, and if he did not whether that decision was reasonable.  However, even

3 if trial counsel was deficient in this regard, Maldonado-Mejia fails to demonstrate prejudice.

4 *Strickland*, 466 U.S. at 694.

5    Heffner "completed an evaluation of the collision of two personal water craft which

6 occurred on May 24, 2009" and concluded "that the left front of the Maldonado-Mejia personal

7 water craft collided with the left side of the [victim's] personal water craft." ECF No. 14-16 at 2.

8 Heffner explained that based on a "review of the provide[d] information" and based on "[t]he

9 angle of the impact, . . . [t]he Maldonado-Mejia [jet ski] was required to give the right of way to

10 the [victim's jet ski]." *Id.* at 3.  This analysis was the same as that given by the State's

11 reconstruction expert, who testified that Maldonado-Mejia "was violating the rules of the road by

12 not being the give-way vessel." ECF No. 14-6 at 29.  Heffner's analysis also appears to report, in

13 the alternative, that:

14       The transcribed testimony of Juan Carlos Maldonado-Mejia states that the [victim's
         jet ski] had passed him on the left side and then cut if [sic] front of his [jet ski] so
15       quickly that he was unable to maneuver to avoid the collision.  In this situation the
         passing vessel is required to give way to the vessel being passed, and not maneuver
16       in a manner to interfere with the operation of the vessel being passed.

17 ECF No. 14-16 at 3.  Although this second analysis is helpful to Maldonado-Mejia's defense that

18 the victim acted recklessly, it is based entirely on Maldonado-Mejia's version of the accident.  It

19 can be concluded that this alternative analysis would not carry as much weight as Heffner's first

20 analysis that Maldonado-Mejia was required to give way to the victim, which was based on

21 Heffner's "review of the provide[d] information."  Thus, Maldonado-Mejia fails to demonstrate

22 that the result of his trial would have been different with a report like Heffner's. *Strickland*, 466

23

1   U.S. at 694.  Ground 3(c) is not substantial and is denied as being procedurally defaulted. *See*

2   *Martinez*, 566 U.S. at 14.

3             **4.**       **Ground 3(d)**

4         In Ground 3(d), Maldonado-Mejia argues that his trial counsel failed to hire a forensic

5   pathologist. ECF No. 9 at 27.  He contends that a pathologist would have been helpful in opining

6   on the victim's pattern of trauma and on how intoxicated the victim had been at the time of the

7   accident, both of which would have established who was primarily responsible for the accident.

8   ECF No. 35 at 16.

9         Even if his trial counsel was deficient for not hiring a forensic pathologist, Maldonado-

10  Mejia fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694.  Maldonado-Mejia fails to

11  allege that a forensic pathologist would have testified on his behalf or would have been able to

12  provide beneficial information to his defense. *See Wildman v. Johnson*, 261 F.3d 832, 839 (9th

13  Cir. 2001) ("Wildman offered no evidence that an arson expert would have testified on his behalf

14  at trial.  He merely speculates that such an expert could be found. Such speculation, however, is

15  insufficient to establish prejudice."); *see also Grisby v. Blodgett*, 130 F.3d 365, 373 (9th Cir.

16  1997) ("Speculation about what an expert could have said is not enough to establish prejudice.").

17  Because this argument fails, Ground 3(d) is not substantial and is denied as being procedurally

18  defaulted. *See Martinez*, 566 U.S. at 14.

19            **5.**       **Ground 3(e)**

20        In Ground 3(e), Maldonado-Mejia argues that his trial counsel failed to meet and

21  interview witnesses who were present on the day of the incident and who were willing to give

22

23

statements and provide testimony. ECF No. 9 at 27.  Specifically, he takes issue with his

counsel's failure to interview Rigoberto Rivera.[5] ECF No. 35 at 17.

In a declaration dated April 30, 2014, Rivera explained that a young man was issued a

citation for operating Maldonado-Mejia's jet ski in an unsafe manner earlier in the day before the

accident. ECF No. 14-11 at 3.  Rivera believed that the State's witness who testified that

Maldonado-Mejia "was operating [the jet ski] recklessly during the day" confused that young

man for Maldonado-Mejia, who had implied to him that he had not been out on the water prior to

the accident.[6] *Id.* at 3-4.  Several hours later, Rivera observed the victim take a jet ski out in the

water, and approximately ten minutes later, Maldonado-Mejia also take a jet ski out into the

water. *Id.* at 3.  "Almost immediately upon exiting the safe area [Rivera] noticed [the victim]

suddenly seem to turn the direction of [Maldonado-Mejia] and speed towards him and then do a

sudden turn in the water as if he was trying to playfully splash [Maldonado-Mejia]." *Id.*

Maldonado-Mejia "did not appear to [Rivera] to see [the victim's] approach before the collision

occurred." *Id.* at 4.  Rivera told Maldonado-Mejia "to give [his] contact information to his lawyer

so that [he] could tell him what [he] saw." *Id.*  However, "[a]fter the trial [Rivera] visited

[Maldonado-Mejia] at the jail and [he] asked him why no one ever contacted [him] and [he] was

told that [Maldonado-Mejia] gave the information to his lawyer and d[id] not know why [Rivera]

was not contacted." *Id.*

---

[5] Maldonado-Mejia also takes issue with his trial counsel's failure to interview Edward Rodriguez. ECF No. 35 at 17.  However, Rodriguez's declaration provided that he "spoke with the attorney retained by Mr. Maldonado-Mejia a couple times over the phone prior to trial." ECF No. 14-12 at 3.  Therefore, Maldonado-Mejia's contention that his trial counsel failed to interview Rodriguez lacks merit.

[6] See Ground 3(k) for a discussion about trial counsel's failure to cross-examine this witness regarding another individual using the jet ski earlier in the day.

As was explained previously, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances." *Strickland*, 466 U.S. at 691; *see also Lewis v. Mazurkiewicz*, 915 F.2d 106, 113 (3d Cir. 1990) (explaining that "trial counsel [is] not bound by an inflexible constitutional command to interview every possible witness"; rather, "counsel [is] simply required to exercise reasonable professional judgment in deciding" who to interview). It is unclear why Maldonado-Mejia's trial counsel did not investigate and interview Rivera, especially if Maldonado-Mejia had given him Rivera's contact information. For this reason, it is difficult to assess Maldonado-Mejia's trial counsel's alleged deficiency. But even if Maldonado-Mejia's trial counsel was deficient, Maldonado-Mejia fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694.

The record demonstrates that the witnesses who observed the accident and testified at trial had slightly different versions of how the accident came about. For example, Dora Villa testified that she saw Maldonado-Mejia "driving [the jet ski] very fast" just prior to hitting the victim, who "was going slowly because he was close to the buoys." ECF No. 14-5 at 20. Kat Lazo testified that just prior to the accident the victim "was by the buoys where you can't go any faster" and was coming into shore. ECF No. 14-6 at 3, 6. And Carlos Bonilla testified that Maldonado-Mejia "was headed towards [the victim], and [the victim] was headed almost directly at him. [The victim] stopped for a moment, when he got close, but then he accelerated again, and that's when they hit." ECF No. 14-7 at 21, 23. Accordingly, it cannot be concluded that there was a reasonable probability that had Maldonado-Mejia's trial counsel interviewed and presented Rivera's testimony at trial—which would have simply added another version of events surrounding the accident, that the victim attempted to splash Maldonado-Mejia—the result of the trial would have been different. *Strickland*, 466 U.S. at 694; *see also United States v. Berry*, 814

F.2d 1406, 1409 (9th Cir. 1987) (denying an ineffective-assistance-of-counsel claim based on counsel's refusal to call witnesses because the defendant "offers no indication of . . . how their testimony might have changed the outcome of the hearing").  Because Maldonado-Mejia fails to demonstrate prejudice, Ground 3(e) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 6.    Grounds 3(f) and 3(g)

In Ground 3(f), Maldonado-Mejia argues that his trial counsel failed to present witnesses who had relevant testimony at trial. ECF No. 9 at 27.  Specifically, Maldonado-Mejia argues that his trial counsel should have had Edward Rodriguez testify, as his testimony that he warned the victim about mechanical problems with the jet ski establishes that the victim was reckless in taking the jet ski out into the water.[7] ECF No. 35 at 18.  In Ground 3(g), Maldonado-Mejia argues that his trial counsel failed to request that Rodriguez testify out of order because he had limited availability. ECF No. 9 at 27.

In a declaration dated April 30, 2014, Rodriguez explained that he "told [Maldonado-Mejia's trial counsel] that [he] had to testify early in the trial, because [he] had business related obligations and [he] could not stay in Las Vegas." ECF No. 14-12 at 3.  However, on the day that Rodriguez "expected to testify," Maldonado-Mejia's trial counsel "was absent from the courthouse for most of the day, and [Rodriguez] was neither approached by him or otherwise asked to testify." *Id.*  Rodriguez then "had to leave and go home at the end of the day." *Id.*  Rodriguez explained that, early the day of the accident, the yellow jet ski that the victim was

---

[7] Maldonado-Mejia also takes issue with his trial counsel's failure to have Rigoberto Rivera testify at his trial. ECF No. 35 at 18.  Because it was determined in Ground 3(e) that Maldonado-Mejia failed to demonstrate prejudice regarding his trial counsel's alleged deficiency in not interviewing Rivera, I cannot determine that Maldonado-Mejia would demonstrate prejudice regarding his trial counsel's alleged deficiency in not having Rivera testify at trial.

driving at the time of the accident "had taken water into the carburetor and could not be safely operated because it would be subject to 'choking out' or stalling, thereby allowing the operator to lose control of the vehicle." *Id.* at 4.  The victim asked Rodriguez about the yellow jet ski, and Rodriguez "told him not to use it because it had been 'flooded out.'" *Id.*  Rodriguez then "later observed that [the victim] was out on the water operating [the yellow jet ski] that [Rodriguez] had just told him could not be safely operated." *Id.*

Rodriguez was initially listed on Maldonado-Mejia's witness list, but he was not included in Maldonado-Mejia's amended witness list. *See* ECF No. 18-4 at 2; ECF No. 18-11.  It is unclear whether Maldonado-Mejia's trial counsel desired to have Rodriguez testify, so it is difficult to assess whether counsel was deficient for not requesting to have Rodriguez testify out of order.  However, even if trial counsel was deficient for not having Rodriguez testify or requesting to have him testify out of order, Maldonado-Mejia fails to demonstrate prejudice. *Strickland*, 466 U.S. at 694.

There is no evidence that the accident occurred due to the victim's jet ski malfunctioning.  It is undisputed that Maldonado-Mejia's and the victim's jet skis collided, causing the victim's fatal injuries.  And even if the victim was negligent in deciding to take the damaged jet ski out on the water, this does not change the fact that witnesses testified that Maldonado-Mejia was also acting negligently. *See* ECF No. 14-5 at 20; ECF No. 14-6 at 6.  This is important because the jury was instructed that "[t]he contributory negligence of another does not exonerate the defendant unless the other's negligence was the sole cause of injury." ECF No. 18-23 at 12.  Accordingly, because Rodriguez's testimony would not have exonerated Maldonado-Mejia, Maldonado-Mejia fails to demonstrate prejudice.  As such, Grounds 3(f) and 3(g) are not substantial and are denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

1        **7.    Grounds 3(h) and 3(i)**

2        In Ground 3(h), Maldonado-Mejia argues that his trial counsel failed to request a

3   continuance due to lack of preparation. ECF No. 9 at 27.  He elaborates that this lack of

4   preparation is shown, in part, by his trial counsel's failure to hire experts, interview witnesses,

5   and meet and prepare him for trial. ECF No. 35 at 19-20.  And in Ground 3(i), he argues that his

6   trial counsel failed to request a continuance due to health issues. ECF No. 9 at 27.

7        In his declaration, Maldonado-Mejia explained that "[b]efore trial, all [his trial counsel]

8   really did was continue the case each time [there was] a hearing." ECF No. 15-7 at 3.  However,

9   "[t]he last time [they] appeared before trial, [the trial judge] said that she could not continue the

10  trial anymore." *Id.*  Indeed, the trial judge's minutes show that calendar calls were held on

11  December 8, 2011 and December 9, 2011—three and four days before the trial began—and that

12  Maldonado-Mejia's trial counsel did not request a continuance but instead stated that he was

13  ready for trial. ECF Nos. 18-20, 18-21.

14       In support of his allegations regarding his trial counsel's health issues, Maldonado-Mejia

15  cites to letters written by several jurors to the trial judge following the trial. *See* ECF No. 14-18.

16  First, Susan Moller reported that on December 15, 2011, Maldonado-Mejia's trial counsel

17  "looked disheveled," did not "look[] very well," seemed "'out of it,'" was "weaving forward and

18  backward," had to "hold onto the jury box and/or the witness box while he was questioning the

19  witness," used the wrong words, and "would close his eyes for so long that [she] thought he

20  might be falling asleep." *Id.* at 4.  Moller "thought he might possibly be having a low blood

21  sugar problem," and that counsel seemed more lucid after eating and drinking something. *Id.*

22       Kathy Gonzalez also reported that on December 15, 2011 Maldonado-Mejia's trial

23  counsel "had poor coloring and looked as if he may have been ill." *Id.* at 6.  She elaborated that

trial counsel did not make sense at times, "seemed to have difficulty maintaining a stance without holding on to something for balance," used the wrong words even after being corrected, and "request[ed that] the jurors . . . find his client guilty." *Id.*

Diane Vigue stated that Maldonado-Mejia's trial counsel's physical appearance and behavior "during his presentation of evidence and his closing argument was, at times, very unprofessional." *Id.* at 8. She stated that counsel "did not represent his client well," and that on December 15, 2011 counsel's "physical appearance was not only distracting but unprofessional. He looked disheveled—his hair was not combed, he wore old dusty shoes, his shirt was hanging out of his pants" and "the skin on his stomach" was showing. *Id.* at 8-9. Vigue also explained that trial counsel used the wrong words, needed to lean on the court's furniture, confused directions, "leaned his head back so far his entire face was pointing toward the ceiling," and asked the jury to find his client guilty. *Id.* at 9.

David Williams reported that on December 15, 2011 Maldonado-Mejia's trial counsel "appeared, to be honest, to not have all of his faculties in presenting his case," as he "seemed to be suffering from some type of mental/physical issue." *Id.* at 11. Williams explained that trial counsel's "speech was not clear, was confusing words related to his client's position and appeared distracted," and "did not provide a compelling argument for his client." *Id.* Williams reported that counsel "appear[ed] to be functioning better on the last day of trial." *Id.*

Mike Akrop reported that on December 15, 2011 trial counsel's hand were shaking slightly, "his line of questioning of the witnesses became difficult to comprehend," he "appeared tired or sluggish at time," and used the wrong words. *Id.* at 14. Akrop explained that he was "not certain if [Maldonado-Mejia's trial counsel was] lacking the required skills to provide an effective defense, or if there was some other issues affecting him that week." *Id.*

1    In support of Ground 3(i), Maldonado-Mejia also cites to the fact that his trial counsel

2   filled a prescription for Suboxone, a "medication[] approved for the treatment of opiate

3   dependence," on December 19, 2011—three days after his trial ended. ECF No. 35-1 at 8, 10.

4   Maldonado-Mejia also notes that his trial counsel died two and a half years after his trial, on May

5   15, 2014. ECF No. 14-21 at 2.

6    The letters from the jurors regarding trial counsel's behavior and appearance at his trial

7   are highly concerning.  But these concerns do not necessarily demonstrate a deficiency regarding

8   a failure to request a continuance.  It is unclear whether counsel exhibited this abnormal behavior

9   prior to the beginning of the trial when a request for a continuance would have been appropriate.

10   Furthermore, even if trial counsel was deficient for not requesting a continuance, Maldonado-

11   Mejia fails to demonstrate prejudice (*Strickland*, 466 U.S. at 694) because, importantly, the trial

12   judge indicated she would not continue the trial another time. ECF No. 15-7 at 3.  Because

13   Maldonado-Mejia's ineffective-assistance-of-trial-counsel argument fails, Grounds 3(h) and 3(i)

14   are not substantial and are denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

15          **8.      Ground 3(j)**

16    In Ground 3(j), Maldonado-Mejia argues that his trial counsel failed to advise him or the

17   court that he was suffering from health-related issues that impaired his ability to serve as trial

18   counsel. ECF No. 9 at 27.  Maldonado-Mejia cites to the jurors' letters. *See* ECF No. 14-18.

19    The letters indicate that Maldonado-Mejia's trial counsel appeared to be unwell during

20   trial, especially on December 15, 2011. *See id.*  However, because many of the jurors noticed and

21   commented upon this, it is likely the trial judge and Maldonado-Mejia also noticed it.  Because

22   the judge and Maldonado-Mejia were able to observe trial counsel's health issues, Maldonado-

23   Mejia fails to meet his burden of demonstrating that the trial would have been different had his

trial counsel verbally advised the state district court and Maldonado-Mejia of the same. *Strickland*, 466 U.S. 694.  In fact, Maldonado-Mejia indicated in his declaration that he was aware that his trial counsel "was taking a lot of medicine before and during [the] trial," "was also sick a lot," "looked ill most days in trial," "seemed tired," "couldn't walk well," and "asked confusing questions."[8] ECF No. 15-7 at 3-5.

Further, two of the jurors indicated that trial counsel's appearance and behavior did not affect their deliberations, thereby negating any prejudice.  Indeed, David Williams reported that although trial counsel's performance was a concern, "jury deliberations were not lengthy based on the facts and testimony of the case," "the verdicts rendered involved little to no disagreement prior to unanimous vote," and trial counsel's health "did not in any way directly impact or bias [the jury's] deliberations or verdict." ECF No. 14-18 at 11.  Likewise, Mike Akrop reported that he was "not sure if [his] decision would have been different had another attorney been in [Maldonado-Mejia's trial counsel's] place as it is difficult to say given the facts of the case." *Id.* at 14.  Because Maldonado-Mejia fails to demonstrate prejudice, Ground 3(j) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

**9.    Ground 3(k)**

In Ground 3(k), Maldonado-Mejia argues that his trial counsel failed to effectively cross-examine lay witnesses, who incorrectly testified that Maldonado-Mejia was recklessly driving his jet ski hours before the accident. ECF No. 9 at 27; ECF No. 35 at 22.

Dora Villa testified that she was camping on May 24, 2009—the day of the accident—when she observed Maldonado-Mejia driving a jet ski "too fast, too near to the beach, and not

---

[8] Maldonado-Mejia also states in his reply brief that "[t]he existence of a health problem was very obvious to everyone in the courtroom." ECF No. 35 at 20.

acting responsibly" during the afternoon. ECF No. 14-5 at 18-19, 21.  Later that evening, Villa saw Maldonado-Mejia operating the same jet ski and "driving [it] very fast" just prior to hitting the victim, who was driving a yellow jet ski. *Id.* at 20.  Maldonado-Mejia argues that his trial counsel should have impeached Villa with a National Park Service report that Louis Manuel was the individual operating his jet ski the afternoon of May 24, 2009, when it was observed "exceeding the flat wake speed within the area clearly marked 'no wake.'" ECF No. 14-10 at 2; *see also* ECF No. 14-8 at 38 (testimony of Maldonado-Mejia that he only used the jet ski at the time of the accident and was not operating it earlier in the afternoon).

It is unclear whether Maldonado-Mejia's trial counsel was aware of the National Park Service report, but because the report was included in discovery materials and because the report would have shown that Manuel—not Maldonado-Mejia—was the one driving the jet ski earlier in the day in a reckless manner, Maldonado-Mejia's trial counsel was deficient for not impeaching Villa with the report. *Strickland*, 466 U.S. at 688.  However, I cannot conclude that Maldonado-Mejia has demonstrated prejudice regarding this deficiency. *Id.* at 694.

Although Villa was mistaken about who was driving the jet ski earlier in the afternoon, there is no dispute that Maldonado-Mejia was driving it at the time of the accident. Demonstrating that Maldonado-Mejia was not driving the jet ski recklessly in the afternoon does not change the fact that he was driving the jet ski recklessly in the evening.  Nothing indicates that "the result of the proceeding would have been different" had his trial counsel impeached that non-critical portion of Villa's testimony. *Id.*; *see also Doe v. Ayers*, 782 F.3d 425, 431 (9th Cir. 2015) (concluding that the defendant's trial counsel "could have done a much better job of impeaching [the witness], . . . but the failures regarding impeachment of [the witness] are of comparatively little consequence").  Moreover, Maldonado-Mejia's trial counsel was able to

24

1    impeach Villa's testimony later in the trial when he asked Lieutenant Michael Maynard about the

2    fact that Villa indicated to him during his investigation that she only heard the accident. ECF No.

3    14-7 at 4.  Therefore, this argument fails, Ground 3(k) is not substantial and is denied as being

4    procedurally defaulted. *See Martinez*, 566 U.S. at 14.

5              **10.    Ground 3(l)**

6              In Ground 3(l), Maldonado-Mejia argues that his trial counsel failed to competently

7    cross-examine expert and law enforcement witnesses. ECF No. 9 at 27.  Specifically,

8    Maldonado-Mejia argues that his trial counsel brought up a theory about him being concussed

9    and then questioned the State's expert about in a nonsensical fashion, failed to cross-examine the

10   police officer and the reconstructionist about the accident and the varying culpability of him and

11   the victim, and asked a question of the State's toxicologist that actually implicated him by

12   eliciting that a concussion would have understated his alcohol usage at the time of the accident.

13   ECF No. 35 at 23-24.

14             First, during his cross-examination of Dr. Olson, Maldonado-Mejia's trial counsel asked

15   "what kind of injuries would [she] expect or look for in the other individual" involved in an

16   accident. ECF No. 14-7 at 21.  As an example, trial counsel asked if the other individual could

17   have received a concussion. *Id.*  Counsel then asked about the signs of a concussion. *See id.*

18   Maldonado-Mejia fails to demonstrate how this line of questioning was nonsensical.

19             Second, regarding his trial counsel's alleged deficiency in cross-examining the police

20   officer and the reconstructionist, it is true that counsel did not ask Maynard or Victor Gamboa

21   about the relative culpability of Maldonado-Mejia and the victim.  However, it cannot be

22   determined that counsel acted deficiently in not doing so. *Strickland*, 466 U.S. at 688.  Indeed,

23   trial counsel appears to have conducted a thorough cross-examination of Maynard, asking him

about where he gathered the information for his reports, whether wind could have been a factor in the accident, how water in a jet ski's carburetor could affect the vehicle's performance, who would have the right-of-way in different situations, whether his assumptions regarding the accident changed based on the fact that the driver or drivers were intoxicated, why he conducted a field sobriety test on the boat, and why he did not take pictures of the people in the crowd for later interviews. ECF No. 14-7 at 4-16.

Maldonado-Mejia's trial counsel also appears to have effectively cross-examined Gamboa by asking who has the right-of-way in different hypothetical situations and asking whether his opinion of how the accident occurred would change had he "have known the water conditions, the intoxication level of the victim, the speed of the victim, [and] how fast the victim was going." ECF No. 14-8 at 20-23.

Further, Maynard's Crime Report Narrative concluded that Maldonado-Mejia was not maintaining a proper lookout, failed to give way, failed to "come off throttle by his own admission," and was "found to be impaired after a series of Field Sobriety Tests." ECF No. 14-15 at 15-16.  Therefore, Maldonado-Mejia's trial counsel may have strategically avoided asking about culpability for fear of eliciting a harmful response.

Thus, it cannot be concluded that Maldonado-Mejia's trial counsel acted unreasonably in cross-examining these witnesses the way he did. *Harrington*, 562 U.S. at 106 ("Rare are the situations in which the wide latitude counsel must have in making tactical decisions will be limited to any one technique or approach."); *see also Strickland*, 466 U.S. at 688-89 ("No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.").

Third, during his cross-examination of Theresa Suffecoof, the State's forensic scientist, Maldonado-Mejia's trial counsel posed the following question: "If an individual is going through medical problems, let's say they had a concussion or a neurological problem, . . . could that affect . . . the body to register the consumption of alcohol quicker." ECF No. 14-8 at 7, 12. Suffecoof responded, "in a trauma situation, it can slow your rate of absorption.  It would push back your peak ethanol level later than normal." *Id.*  Even though Maldonado-Mejia's trial counsel's question about Maldonado-Mejia's intoxication level and possible concussion appears to have backfired, counsel was attempting to point out that Maldonado-Mejia's alcohol test was unreliable.  Thus, it cannot be concluded that this questioning "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.  Indeed, "[t]he Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight." *Yarborough v. Gentry*, 540 U.S. 1, 8 (2003); *see also Harrington*, 562 U.S. at 107 (2011) ("Counsel is entitled to formulate a strategy that was reasonable at the time.").  Because this argument fails, Ground 3(l) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 11.    Ground 3(m)

In Ground 3(m), Maldonado-Mejia argues that his trial counsel failed to meet with him prior to and during trial. ECF No. 9 at 27.  Defense counsel has a duty to "consult with the defendant on important decisions and to keep the defendant informed of important developments." *Strickland*, 466 U.S. at 688.  Maldonado-Mejia fails to demonstrate that his trial counsel did not meet these duties.  Maldonado-Mejia's declaration provides that his trial counsel

sent him two letters and met with him "6 or 8 times" prior to the start of the trial.[9] ECF No. 15-7 at 2.  Although Maldonado-Mejia may have wished to meet with his counsel more often, it cannot be concluded, based on the record, that Maldonado-Mejia's trial counsel acted deficiently. *Strickland*, 466 U.S. at 688.  Because this argument fails, Ground 3(m) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 12.   Ground 3(n)

In Ground 3(n), Maldonado-Mejia argues that his trial counsel failed to prepare him to testify. ECF No. 9 at 27.  Maldonado-Mejia elaborates that preparation would have made him less nervous and more credible as a witness. ECF No. 35 at 26.  His declaration explains that his trial counsel "did not prepare [him] before [he] testified." ECF No. 15-7 at 5.  Instead, counsel "only told [him] that the jurors should hear from [him] and that it was important to let [his] side of the story be told." *Id.*

During the trial, the trial judge advised Maldonado-Mejia of his "right to refuse to take the stand in a criminal prosecution against [him]." ECF No. 14-8 at 16.  The judge told Maldonado-Mejia that he "should make the decision whether or not to testify after [he had] consulted with [his] attorney." *Id.* at 17.  Maldonado-Mejia responded that he was "going to speak with [his trial counsel]." *Id.*  Maldonado-Mejia's trial counsel added that they "had discussed it" and that it was his "anticipation that [Maldonado-Mejia] will be testifying." *Id.* Prior to Maldonado-Mejia taking the stand later that day, the trial judge allowed Maldonado-Mejia and his trial counsel "a few minutes" for discussion. *Id.* at 34.

---

[9] Taurino Avalos, Maldonado-Mejia's brother-in-law, declared that he "travelled on as many as ten occasions from [his] home in California to Las Vegas to attend meetings with [Maldonado-Mejia] at his attorney's office in the years prior to trial in order to translate for [Maldonado-Mejia]." ECF No. 14-14 at 3.  Avalos "was not present at every meeting." *Id.*  This demonstrates that Maldonado-Mejia met with his trial counsel more times than he admits.

1    These facts support a finding that Maldonado-Mejia's trial counsel was not deficient.

2    *Strickland*, 466 U.S. at 688.  And even if counsel was deficient (because the content of their

3    discussions is unknown), Maldonado-Mejia fails to demonstrate prejudice. *Id.* at 694.  A review

4    of his testimony demonstrates that he was able to cogently answer questions posed by his

5    counsel and the State. *See* ECF No. 14-8 at 35-40.  Because Maldonado-Mejia fails to

6    demonstrate prejudice, Ground 3(n) is not substantial and is denied as procedurally defaulted.

7    *See Martinez*, 566 U.S. at 14.

8              **13.    Ground 3(o)**

9    In Ground 3(o), Maldonado-Mejia argues that his trial counsel failed to prepare defense

10   witness Taurino Avalos for his testimony. ECF No. 9 at 27; ECF No. 35 at 26.  He explains that

11   Avalos was not able to understand many of his trial counsel's questions and that if his counsel

12   had asked him direct examination questions in advance, Avalos could have gotten clarification

13   before testifying before the jury. ECF No. 35 at 26-27.  Instead, Avalos seemed less credible

14   during his testimony, which hurt Maldonado-Mejia's defense. *Id.* at 27-28.

15   During direct examination, Maldonado-Mejia's trial counsel asked Avalos, Maldonado-

16   Mejia's brother-in-law, if he knew whether the victim "had been drinking." ECF No. 14-8 at 27.

17   Avalos responded, "[h]e was in the party over there. I am pretty sure they were." *Id.*  Trial

18   counsel then asked Avalos if he was "in the water when th[e] jet ski accident took place." *Id.*

19   Avalos asked Maldonado-Mejia's trial counsel to repeat the question. *Id.*  After Maldonado-

20   Mejia's trial counsel asked the question again, Avalos answered in the affirmative. *Id.*  Later,

21   during cross-examination, Avalos stated that he "had [his] back against the lake" when the

22   accident occurred. *Id.* at 31.  When the State indicated that Avalos had previously testified during

23

direct examination that he was "out on the water" when the accident occurred, Avalos stated that he "just got confused." *Id.*

The State also asked Avalos why he did "not want to talk to the Division of Wildlife officers when they contacted [him] in June of 2009," and Avalos explained that he "asked them to speak to [his] attorney." *Id.* at 29-30.  Maldonado-Mejia's trial counsel objected after the State asked if Avalos was "afraid that [he] had done something wrong," arguing that there were "numerous reasons," including civil protection, why Avalos may have wanted to speak with a lawyer first. *Id.* at 30.

During re-direct examination, Maldonado-Mejia's trial counsel asked Avalos whether he "remember[ed] somebody telling [him] that the Defendant was advised don't take the yellow jet ski." *Id.* at 33.  The trial judge asked Maldonado-Mejia's trial counsel if he meant to refer to the decedent, rather than the defendant, but when Maldonado-Mejia's trial counsel asked the question a second time, he again asked about the defendant. *Id.*  After a bench conference, Maldonado-Mejia's trial counsel asked the question correctly. *Id.*

Several years after the trial, Avalos signed a declaration stating he "never was asked to go over [his] testimony with [Maldonado-Mejia's trial counsel] and during the trial [he] was often unable to answer [Maldonado-Mejia's trial counsel's] questions because [he] could not understand them." ECF No. 14-14 at 3.  Avalos also declared that "[i]t was not explained to [him] what the process would be for cross-examination." *Id.*  Avalos avers that further preparation would have allowed him to better answer the State's question about him not talking to the investigators. *Id.*  Avalos wanted to speak with a lawyer before speaking with investigators because they gave him a breathalyzer test, which "led [him] to mistrust them." *Id.*  Regarding his conflicting testimony about his location when the accident occurred, Avalos explained that he

1   was confused by Maldonado-Mejia's trial counsel's question. *Id.* at 4.  And regarding the

2   victim's intoxication, Avalos explained that he told Maldonado-Mejia's trial counsel "that [he]

3   knew someone had advised [the victim] not to use the jet ski because it had been flooded," but

4   Maldonado-Mejia's trial counsel got confused and asked him about the victim's intoxication

5   instead. *Id.*  Because Avalos did not know about the victim's drinking, Avalos "believe[d his

6   confusion regarding the intoxication questions] made it look like [he] was not telling the truth."

7   *Id.*  Finally, Avalos explained that he was confused by Maldonado-Mejia's trial counsel's

8   questions due to counsel's confusion in referring to the deceased as the defendant. *Id.* at 5.

9          Regarding Maldonado-Mejia's trial counsel's questions about Avalos' location at the

10   time of the accident, I cannot conclude that counsel was deficient. *Strickland*, 466 U.S. at 688.

11   Counsel asked Avalos a clear question, which he repeated upon request. *See* ECF No. 14-8 at 27.

12   As such, Avalos' confusion over the question cannot be attributed to counsel.  I also cannot

13   conclude that trial counsel was deficient regarding his alleged lack of warning to Avalos that the

14   State may ask about his desire to hire a lawyer before answering investigative questions.

15   *Strickland*, 466 U.S. at 688.  Maldonado-Mejia's trial counsel objected to the line of questioning

16   and even provided a reasonable purpose for Avalos' request: he was worried about being sued

17   since the victim was riding his jet ski at the time of the accident. *See* ECF No. 14-8 at 30.

18          Turning to the other two contentions regarding the victim's drinking and mix-up of the

19   defendant and the decedent, even if trial counsel was deficient, Maldonado-Mejia fails to

20   demonstrate prejudice. *Strickland*, 466 U.S. at 694.  Although Avalos may not have been

21   prepared to be asked about the victim's drinking, he appeared to answer Maldonado-Mejia's trial

22   counsel's questions appropriately. *See* ECF No. 14-8 at 27.  Second, after the judge corrected

23

1    Maldonado-Mejia's trial counsel twice regarding his use of the word "defendant" instead of

2    "deceased," counsel correctly asked the question. *Id.* at 33.

3        Because this argument fails, Ground 3(o) is not substantial and is denied as being

4    procedurally defaulted. *See Martinez*, 566 U.S. at 14.

5                    **14.    Grounds 3(p) and 3(t)**

6        In Ground 3(p), Maldonado-Mejia argues that his trial counsel failed to proffer a jury

7    instruction on his theory of the case. ECF No. 9 at 27-28.  Relatedly, in Ground 3(t), Maldonado-

8    Mejia argues that his trial counsel failed to advance a single cogent theory of defense. *Id.* at 28.

9        During his opening statement, Maldonado-Mejia's trial counsel noted that "the victim

10   was drunk, very drunk," that the "victim had no experience driving a . . . jet ski," and that the jet

11   ski the victim was driving was broken. ECF No. 14-5 at 17.  Maldonado-Mejia's trial counsel

12   also noted that the park ranger failed to interview and  "get the names of everyone there," that

13   Maldonado-Mejia's blood was not tested right away for alcohol, and that his sobriety test was

14   conducted on a boat while he was in shock. *Id.*  Similarly, during closing argument, Maldonado-

15   Mejia's trial counsel argued that Maldonado-Mejia may have been drinking, but he was not

16   drunk; that the sobriety test on the boat was unfair, especially since Maldonado-Mejia was

17   exhibiting signs of a concussion due to the accident; that the victim was drunk at the time of the

18   accident; that the water was rough at the time of the accident; and that the victim was

19   inexperienced in driving jet skis. ECF No. 14-9 at 7-8.  These arguments demonstrate that

20   Maldonado-Mejia's trial counsel offered several theories of defense: the victim was the cause of

21   the accident, the investigation was inadequate, and Maldonado-Mejia was not under the

22   influence of alcohol to a degree that rendered him incapable of operating his jet ski.  As such,

23

1  Maldonado-Mejia fails to demonstrate that his trial counsel was deficient regarding developing a

2  theory of defense. *Strickland*, 466 U.S. at 688.

3        The record also demonstrates that the defense did not offer any instructions that were not

4  given. ECF No. 14-9 at 2.  Maldonado-Mejia argues that his trial counsel could have requested a

5  jury instruction regarding the victim's reckless behavior being the main contributor to his death.

6  ECF No. 35 at 28.  Whether trial counsel requested the instruction or not, the jury was instructed

7  as follows regarding causation: "[t]he contributory negligence of another does not exonerate the

8  defendant unless the other's negligence was the sole cause of injury." ECF No. 18-23 at 12.

9  Because the jury was instructed on causation and because Maldonado-Mejia fails to explain what

10  other instruction his trial counsel should have proffered, Maldonado-Mejia fails to demonstrate

11  that his trial counsel was deficient. *Strickland*, 466 U.S. at 688.

12        Because these arguments fail, Grounds 3(p) and 3(t) are not substantial and are denied as

13  being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

14            **15.**     **Ground 3(q)**

15        In Ground 3(q), Maldonado-Mejia argues that his trial counsel failed to object to any of

16  the State's jury instructions. ECF No. 9 at 28.  He contends his counsel should have objected to

17  Jury Instruction No. 4 because it did not include an "and" in the list of elements of the offense, to

18  Jury Instruction No. 12 as irrelevant due to its rules regarding ships with radar and long-range

19  scanning, Jury Instruction No. 21 because it applies only to a case involving a co-defendant or an

20  uncharged co-conspirator, and Jury Instruction No. 29 because it was inappropriate in a case

21  "involv[ing] an accidental decedent." ECF No. 35 at 29.

22        Jury Instruction No. 4 provided:

23  The elements of Operating a Vessel While Under the Influence of Intoxicating
     Liquor (Felony) are:

    (1)    A person is operating a vessel;

    (2)    The person while operating the vessel:

        (a)    is under the influence of intoxicating liquor to a degree which renders him incapable of safely operating the vessel; or

        (b)    has a concentration of alcohol of 0.08 or more in their blood or breath; or

        (c)    is found by measurement within two (2) hours after operating the vessel to have a concentration of alcohol of 0.08 or more of alcohol in his blood.

    (3)    Does any act or neglects any duty imposed by law while operating the vessel;

    (4)    The act or neglect of duty proximately causes;

    (5)    The death of another person.

ECF No. 18-23 at 6. Although there is no "and" within the foregoing list, the title of the felony includes the word "elements," which implies that each element must be found. Additionally, Maldonado-Mejia's argument that the lack of the word "and" implied "that the elements are a disjunctive list" (*see* ECF No 35 at 29) is illogical given that the individual elements do not amount to an offense. Therefore, Maldonado-Mejia fails to demonstrate that his trial counsel was deficient for not objecting to Jury Instruction No. 4. *Strickland*, 466 U.S. at 688.

        Jury Instruction No. 12 provided:

    1.    Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist.

    2.    Proper use shall be made of radar equipment if fitted and operational, including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalents systematic observation of detected objects.

    3.    Assumptions shall not be made on the basis of scanty information, especially scanty radar information.

    4.    In determining if risk of collision exists the following considerations shall be among those taken into account:

        i.    Such risk shall be deemed to exist if the compass bearing of an approaching vessel does not appreciably change;

        ii.    Such risk may sometimes exist even when an appreciable bearing change is evident, particularly when approaching a very large vessel or a tow or when approaching a vessel at close range.

1   ECF No. 18-23 at 14.  While Maldonado-Mejia is correct that the second provision of Jury

2   Instruction No. 12 is inapplicable to the facts of the case at hand, the remainder of the instruction

3   is applicable, and as such, it cannot be concluded that Maldonado-Mejia's trial counsel was

4   deficient for not objecting to Jury Instruction No. 12 in its entirety. *Strickland*, 466 U.S. at 688.

5           Jury Instruction No. 21 provided:

6           You are here to determine the guilt or innocence of the Defendant from the evidence
            in the case. You are not called upon to return a verdict as to the guilt or innocence
7           of any other person. So, if the evidence in the case convinces you beyond a
            reasonable doubt of the guilt of the Defendant, you should so find, even though you
8           may believe one or more persons are also guilty.

9   ECF No. 18-23 at 23.  Although Jury Instruction No. 21 may be appropriate in a case involving a

10  co-defendant or an uncharged co-conspirator, that does not make it inappropriate for the case at

11  hand.  The instruction says that the jury is "not called upon to return a verdict as to the guilt or

12  innocence of any other person." *Id.*  Accordingly, it cannot be concluded that Maldonado-

13  Mejia's trial counsel was deficient for not objecting to Jury Instruction No. 21.  *Strickland*, 466

14  U.S. at 688.

15          Jury Instruction No. 29 provided:

16          Now you will listen to the arguments of counsel who will endeavor to aid you to
            reach a proper verdict by refreshing in your minds the evidence and by showing the
17          application thereof to the law; but, whatever counsel may say, you will bear in mind
            that it is your duty to be governed in your deliberation by the evidence as you
18          understand it and remember it to be and by the law as given to you in these
            instructions, with the sole, fixed and steadfast purpose of doing equal and exact
19          justice between the Defendant and the State of Nevada.

20  ECF No. 18-23 at 31.  Because Maldonado-Mejia and the State of Nevada were the two parties

21  at trial, Jury Instruction No. 29 was proper and Maldonado-Mejia's trial counsel was not

22  deficient for not objecting to it. *Strickland*, 466 U.S. at 688.

23

1    Because this argument fails, Ground 3(q) is not substantial and is denied as being

2    procedurally defaulted. *See Martinez*, 566 U.S. at 14.

3            **16.    Ground 3(r)**

4            In Ground 3(r), Maldonado-Mejia argues that his trial counsel failed to attempt to

5    negotiate a plea disposition on his behalf prior to trial. ECF No. 9 at 28.  In support of this claim,

6    Maldonado-Mejia cites to his own declaration, which states that his trial counsel "never talked to

7    [him] about any plea negotiations." ECF No. 15-7 at 9.

8            "[D]efense counsel have responsibilities in the plea bargain process, responsibilities that

9    must be met to render the adequate assistance of counsel that the Sixth Amendment requires in

10   the criminal process at critical stages." *Missouri v. Frye*, 566 U.S. 134, 143 (2012) (explaining

11   that "the negotiation of a plea bargain . . . is almost always the critical point for a defendant").

12   And "[i]f a plea bargain has been offered, a defendant has the right to effective assistance of

13   counsel in considering whether to accept it." *Lafler v. Cooper*, 566 U.S. 156, 168 (2012).  There

14   is no evidence that the State made a plea offer to Maldonado-Mejia or his counsel, so there is no

15   issue with Maldonado-Mejia's counsel failing to advise him regarding an offer.  Nonetheless,

16   Maldonado-Mejia argues that his trial counsel should have sought a plea offer even if one was

17   not forthcoming from the State.  However, Maldonado-Mejia's trial counsel explained in an

18   unrelated motion that Maldonado-Mejia "is not a U.S. Citizen, but a legal resident, which

19   compromises the options to negotiate." ECF No. 18-6 at 4.  Further, because Maldonado-Mejia

20   cannot show that the State was receptive to a plea bargain—indeed, it declined to make one—or

21   would have accepted a plea offer had one been made, Maldonado-Mejia fails to demonstrate

22   prejudice. *Strickland*, 466 U.S. at 694; *Lafler*, 566 U.S. at 163 ("In the context of pleas a

23   defendant must show the outcome of the plea process would have been different with competent

1  advice.").  Because this argument fails, Ground 3(r) is not substantial and is denied as being

2  procedurally defaulted. *See Martinez*, 566 U.S. at 14.

3                 **17.**     **Ground 3(s)**

4         In Ground 3(s), Maldonado-Mejia argues that his trial counsel failed to honestly advise

5  him about the status and likely outcome of his case. ECF No. 9 at 28.  Maldonado-Mejia avers

6  that this prejudiced him because he was "dissuaded . . . from taking action by finding a new

7  lawyer or going out and marshalling witnesses on his own right." ECF No. 35 at 30.  Maldonado-

8  Mejia states in his declaration that his trial counsel "told [him] the case would likely be

9  dismissed in Las Vegas because there was no evidence," "that everything was going well" during

10  the trial, and "that [the trial] was going well and that the state did not have enough evidence to

11  convict [him]." ECF No. 15-7 at 3-5.  While this advice may not have been accurate given the

12  fact that Maldonado-Mejia was found guilty, Maldonado-Mejia fails to demonstrate prejudice.

13  *Strickland*, 466 U.S. at 694.

14         The second two of these statements were made by trial counsel after trial had begun.  The

15  timing of these statements negates Maldonado-Mejia's prejudice argument that he would have

16  sought a new lawyer or witnesses on his own had his trial counsel given him honest advice.  And

17  regarding the first statement—that his trial counsel believed that the charges would be

18  dismissed—Maldonado-Mejia fails to demonstrate that he had the funds to retain different

19  counsel, that different counsel would have advised him differently, or that the verdict would have

20  been different with different trial counsel. *See Djerf v. Ryan*, 931 F.3d 870, 881 (9th Cir. 2019)

21  ("*Strickland* prejudice is not established by mere speculation.").  Thus, this argument fails,

22  Ground 3(s) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566

23  U.S. at 14.

### 18.    Ground 3(u)

In Ground 3(u), Maldonado-Mejia argues that his trial counsel failed to raise cause challenges to two jurors: Kim Montoya and Aimee Denkers. ECF No. 9 at 28; ECF No. 35 at 32-33.  During jury selection, Denkers reported that she had "2 friends that were killed in a DUI accident." ECF No. 14-4 at 12.  And Montoya reported that she "was married to a drunk" who was charged with several DUIs. *Id.* at 33.  Montoya stated that she thought that the court system "should have been harder on" her ex-husband and law enforcement should be stricter on people with DUIs because "[t]hey could kill anybody." ECF No. 14-5 at 5.  When asked if she could be fair and impartial, Montoya responded, "[t]o be honest, no, because I think our laws ought to be stronger for DUIs, whether it is on a boat, or in a car, or semi, even on a bus." *Id.*

Even if Maldonado-Mejia's trial counsel was deficient for failing to excuse these two jurors for cause, there is no prejudice because neither of these jurors deliberated on the case. *Strickland*, 466 U.S. at 694.  Montoya appears to have been excused on a peremptory challenge, and although Denkers was one of the fourteen remaining jurors following jury selection, she was excused prior to the case being submitted to the jury. ECF No. 14-5 at 10; ECF No. 14-8 at 40.  Because this argument fails, Ground 3(u) is not substantial and is denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

### 19.    Ground 3(v)

In Ground 3(v), Maldonado-Mejia argues that his trial counsel failed to make a record of the seven bench conferences that took place during the trial. ECF No. 9 at 28; ECF No. 35 at 34-35.  The first bench conference was taken at Maldonado-Mejia's trial counsel's request while the trial judge was questioning a prospective juror during jury selection. ECF No. 14-4 at 20.  The second bench conference was taken by the judge after she finished questioning the prospective

jurors. *Id.* at 40.  Following that bench conference, the trial judge excused all but 24 of the prospective jurors, saying that "[e]verybody is comfortable that th[ese] 24 folks are going to be okay," and told those 24 prospective jurors to take a break before questioning by the attorneys. *Id.*  The third bench conference was during the victim's niece's testimony about her observations of Maldonado-Mejia after the accident. ECF No. 14-6 at 7.  The State was questioning this witness about whether Maldonado-Mejia showed signs of being intoxicated. *Id.*  Maldonado-Mejia's trial counsel objected several times and asked for a bench conference after the victim started discussing drinking within "the Latin culture." *Id.*  Following the bench conference, the judge allowed the witness to finish answering. *Id.*  The fourth bench conference was requested by Maldonado-Mejia's trial counsel following the State's examination of Maynard. *Id.* at 31. Following that bench conference, the judge indicated that cross-examination of the witness would start the next morning. *Id.*  The fifth bench conference occurred at the request of Maldonado-Mejia's trial counsel before the medical examiner took the stand. ECF 14-7 at 16. The sixth bench conference occurred at the conclusion of an investigator's testimony due to a question posed by a juror. ECF No. 14-8 at 24.  And the seventh bench conference occurred after the State gave its closing argument. ECF No. 14-9 at 7.  Following that bench conference, the judge took a four-minute break at the request of Maldonado-Mejia's trial counsel. *Id.*

Although Maldonado-Mejia's trial counsel may have been deficient for failing to put these bench conferences on the record, Maldonado-Mejia fails to meet his burden of showing that "there is a reasonable probability that, but for" his trial counsel's failure to put these conferences on the record, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.  In fact, it appears that three of these bench conferences—the second, fourth, and seventh—were merely about timing issues and taking a break during the proceedings.

1  *See* ECF No. 14-4 at 40; ECF No. 14-6 at 31; ECF No. 14-9 at 7.  Two of the bench

2  conferences—the first and fifth—have no context whatsoever from a review of the record. *See*

3  ECF No. 14-4 at 20; ECF No. 14-7 at 16.  The third bench conference was to further discuss an

4  objection that Maldonado-Mejia's trial counsel made on the record regarding the State's

5  questioning of a witness. ECF No. 14-6 at 7.  And the sixth bench conference was to discuss a

6  juror's question before posing that question to the witness. ECF No. 14-8 at 24.  Based on this

7  information in the record, I cannot conclude that Maldonado-Mejia has demonstrated prejudice.

8  *Strickland*, 466 U.S. at 694.  Because this argument fails, Ground 3(v) is not substantial and is

9  denied as being procedurally defaulted. *See Martinez*, 566 U.S. at 14.

10          **20.    Ground 3(w)**

11          In Ground 3(w), Maldonado-Mejia argues that his trial counsel failed to submit any

12  mitigating evidence at his sentencing hearing.[10] ECF No. 9 at 28.  Counsel's performance at the

13  penalty phase is measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688.

14  And I "must avoid the temptation to second-guess [counsel's] performance or to indulge 'the

15  distorting effects of hindsight.'" *Mayfield v. Woodford*, 270 F.3d 915, 927 (9th Cir. 2001) (citing

16  *Strickland*, 466 U.S. at 689).  But "judicial deference to counsel is predicated on counsel's

17  performance of sufficient investigation and preparation to make reasonably informed, reasonably

18  sound judgments." *Id.*  When challenging a trial counsel's actions in failing to present mitigating

19  evidence during a sentencing hearing, the "principal concern . . . is not whether counsel should

20  have presented a mitigation case[, but instead] . . . whether the investigation supporting counsel's

21

22

23

---

[10] In Maldonado-Mejia's reply brief, he appears to morph this ground into a "failure to submit any mitigating evidence to the jury," rather than a failure to submit mitigating evidence at sentencing, as his petition provides. *See* ECF No. 35 at 36.  I consider this ground only as it was originally presented in the petition.

1  decision not to introduce mitigating evidence . . . *was itself reasonable*." *Wiggins v. Smith*, 539

2  U.S. 510, 522-23 (2003) (emphasis in original).

3      Maldonado-Mejia's trial counsel did not submit any mitigating evidence at the sentencing

4  hearing. *See* ECF No. 15-6.  Instead, counsel argued that Maldonado-Mejia "disputed during the

5  course of the trial the level of alcohol in his system," "disputed during the course of the trial the

6  causation of the incident," and had a limited criminal history. *Id.* at 5.  Counsel requested that the

7  judge sentence him to 24 months "as a minimum." *Id.*

8      Although Maldonado-Mejia's trial counsel did not submit any mitigating evidence at his

9  sentencing hearing, I cannot conclude that Maldonado-Mejia's trial counsel was deficient.

10  *Strickland*, 466 U.S. at 688.  First, because this case went to trial, the evidence disputing

11  intoxication and the cause of the accident had already been presented.  Second, and more

12  importantly, Maldonado-Mejia fails to explain what mitigating evidence his trial counsel should

13  have presented at his sentencing hearing.  This failure to support Ground 3(w) with specific

14  allegations is fatal to the claim. *See, e.g., Jones v Gomez*, 66 F.3d 199, 205 (9th Cir. 1995).

15  Because this argument fails, Ground 3(w) is not substantial and is denied as being procedurally

16  defaulted. *See Martinez*, 566 U.S. at 14.

17  **IV.    CERTIFICATE OF APPEALABILITY**

18      This is a final order adverse to Maldonado-Mejia.  Rule 11 of the Rules Governing

19  Section 2254 Cases requires me to issue or deny a certificate of appealability (COA).  I have *sua*

20  *sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28

21  U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).  A COA may issue

22  only when the petitioner "has made a substantial showing of the denial of a constitutional right."

23  28 U.S.C. § 2253(c)(2).  With respect to claims rejected on the merits, a petitioner "must

1 demonstrate that reasonable jurists would find the district court's assessment of the constitutional

2 claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v.*

3 *Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if

4 reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a

5 constitutional right and (2) whether the court's procedural ruling was correct. *Id.*  Applying these

6 standards, I find that a certificate of appealability is unwarranted.

7 **V.    CONCLUSION**

8        I THEREFORE ORDER that the Amended Petition for Writ of Habeas Corpus Pursuant

9 to 18 U.S.C. 2254 (**ECF No. 9**) is **DENIED**.

10        I FURTHER ORDER that the petitioner is denied a certificate of appealability.

11        I FURTHER ORDER the Clerk of the Court to enter judgment accordingly.

12        Dated:  July 13, 2020.

        _____
        ANDREW P. GORDON
        UNITED STATES DISTRICT JUDGE

13

14

15

16

17

18

19

20

21

22

23